IN THE UNITED STATED DISTRICT COURT FOR THE
NORTHERN DISTRICT OF IOWA, WESTERN DIVISION

| | | |
|---|---|---|
| JOHN D. O'HOLLERAN, M.D, | : | CASE NO. |
| PLAINTIFF, | : | |
| VS. | : | |
| IOWA PHYSICIANS CLINIC MEDICAL FOUNDATION d/b/a UNITY POINT CLINIC, | : | COMPLAINT AND JURY DEMAND |
| | : | |
| DEFENDANT, | | |

## COUNT I.
## ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff lives in Lake Oswego, Oregon. At times material to this matter, Plaintiff was employed by Iowa Physicians Clinic Medical Foundation d/b/a Unity Point Clinic, a corporation within the laws of the state of Iowa, and assigned to St. Luke's Medical Center in Sioux City, Iowa, to perform work as a general surgeon.

2. Defendant, Iowa Physicians Clinic Medical Foundation d/b/a Unity Point Clinic is a non-profit corporation organized under the laws of the state of Iowa and operates various medical facilities, one of which is St. Luke's Hospital in Sioux City, Iowa.

3. This matter exceeds the jurisdictional minimums of this court.

4. There is diversity of citizenship at the time of filing this matter as plaintiff is a resident of the State of Oregon and Defendant is an Iowa corporation.

5. On the 12th day of April, 2022, a written physician employment agreement was entered

1

into between Plaintiff and Defendant. A copy of that agreement is attached hereto and marked as Exhibit 1 and made a part hereof by this reference.

6. Plaintiff performed services pursuant to Exhibit 1 until determining the atmosphere and conditions were not as represented and Plaintiff then gave a notice of termination on March 27, 2023 to end his employment with the Unity Point Clinic as of July 25, 2023.

## COUNT II.
## NEGLIGENT MISREPRESENTATION

7. Plaintiff repleads his allegations of paragraphs 1 through 6 as though fully set forth herein.

8. Throughout the recruitment process commencing February 4, 2022, and culminating in Exhibit 1, Defendant assured Plaintiff of detailed information concerning the duties Plaintiff would perform as one of the general surgeons. Plaintiff was specific that he did not do advanced trauma, endoscopy, pediatrics, or vascular procedures. Defendant assured Plaintiff that those were not conditions of his employment nor expectations of him.

9. In the initial recruitment, Defendant acted through employees, Jane Arnold, Jeremy Granger, M.D., and Lorenzo Suter.

10. Defendant had a financial interest in implying those representations to Plaintiff as Defendant was in need of a general surgeon. These representations to Plaintiff were intended to recruit him and secure his employment as a general surgeon. Defendants were also aware that the representations they were making to Plaintiff were intended to influence Plaintiff accept the position as a general surgeon with Defendant.

11. Plaintiff acted in reliance on the truth of the information supplied and was justified in relying on that information with regard to the types of duties he would perform.

2

12. Once employed, Plaintiff's employment was made difficult and he was criticized for failing to perform the duties which he was told he would not need to do. That negligently supplied information was a cause of Plaintiff's damage as he was acting in reliance on the truth of the information supplied and was justified in doing so.

13. The damages to Plaintiff include a decrease in salary from the position with Defendant to Plaintiff's new position in Oregon, the damage from the loss of selling the house from his employment with Defendant, expenses of relocation and claims by Defendant that he should reimburse for malpractice tail coverage and reimbursement for the signing bonus.

WHEREFORE, Plaintiff requests judgment against Defendant for damages that result and arising from negligent misrepresentation of Defendant.

## COUNT III
## BREACH OF CONTRACT

13. Plaintiff repleads his allegations of paragraphs 1 through 13 as though fully set forth herein.

14. In Exhibit 1 paragraph 3(h) Defendant contracted that they would not try to exercise any control over the professional judgment and decision making of Plaintiff. Contrary to the contractual provisions set our in 3(h) of Exhibit 1, the management of Defendant consistently attempted to exercise control over the professional judgment of Plaintiff and made work conditions so difficult and impossible that it led to Plaintiff to resigning due to the hostile work environment of Defendant.

15. This action by Defendant was in direct breach of the contractual provisions of Plaintiff's contract with Defendant.

16. The breach by Defendant has caused a direct loss and damages to Plaintiff by a decrease

in salary' cost of relocation; loss on house sale; and claims by Defendant that Plaintiff should repay the signing bonus and should reimburse Defendant for malpractice tail coverage. Plaintiff should recover these damages.

WHEREFORE, Plaintiff requests judgment against Defendant for damages that result and arising from Defendant's breach of contract.

## JURY DEMAND

COMES NOW Plaintiff and requests a jury trial on all issues herein.

*/s/ Stephen F. Avery*
Stephen F. Avery
CORNWALL, AVERY, BJORNSTAD & SCOTT
407 Grand Avenue, PO Box 999
Spencer, IA 51301
Phone: 712-262-1630
Fax: 712-262-1211
Email: steve@cabslaw.com
Attorney for Plaintiff

4

# PHYSICIAN EMPLOYMENT AGREEMENT

**THIS AGREEMENT** is entered into effective the 12th day of April, 2022, by and between IOWA PHYSICIANS CLINIC MEDICAL FOUNDATION d/b/a UNITYPOINT CLINIC, a nonprofit corporation organized under the laws of the State of Iowa, hereinafter called "Foundation," and **John D. O'Holleran, M.D.**, hereinafter called "Physician".

## RECITALS

**WHEREAS,** Foundation has been established to qualify as an organization that is exempt from federal income taxes under Section 501(c)(3) of the Internal Revenue Code for the purpose of promoting the health of the residents of the communities it serves and employing physicians to render medical care and treatment; and

**WHEREAS,** Foundation is a senior affiliate of UnityPoint Health, an integrated health care delivery system that promotes the health of the residents of the communities it serves through the care provided by its affiliated entities; and

**WHEREAS,** Foundation desires to retain the professional services of Physician to assist in meeting its patient care mission; and

**WHEREAS,** Foundation has offered employment to Physician subject to Physician's satisfactory compliance with, and completion of, and the results of post offer employment related requirements (e.g., background screening, reference checks, etc.); and

**WHEREAS,** Physician is willing to accept employment with Foundation on the terms and conditions specified herein.

**NOW, THEREFORE,** Foundation and Physician mutually agree as follows:

## TERMS

1. **Employment.** Commencing on **June 20, 2022**, Foundation agrees to employ Physician, and Physician agrees to accept employment, upon the terms and conditions hereinafter set forth. This Employment Agreement and any attachments hereto, which are hereby incorporated, are collectively referred to as "this Agreement."

2. **Duties.** Physician agrees to devote his or her professional time and attention to the furnishing of medical and professional services to patients and institutions. In doing so, Physician agrees to contribute his or her best professional skill and services at all times for the business and benefit of Foundation and to act in accordance with the highest ethical standards of the medical profession. Subject to Section 3(h) below, when exercising clinical judgment under this Agreement, Physician shall be under the direction and supervision of the clinical leadership of the Foundation. In performing all other duties under this Agreement (i.e., those not requiring a medical license), Physician shall be under the direction and supervision of the Foundation's organizational leadership and management. Physician shall not engage directly or indirectly in the practice of medicine nor receive lecture fees or other similar honoraria or other professional remuneration for his or her own account or for the account of any others without the prior written consent of Foundation and without meeting such conditions as Foundation may attach to such consent.

3. **General Conditions.** The following general conditions apply to Physician's employment with respect to the provision of medical services.

   a. **Records.** All medical records created as a result of services provided by Physician under this Agreement are the property of Foundation. Physician agrees to maintain such records in accordance with established policies and to complete all records and reports in a timely fashion and to do so in compliance with the requirements of governmental and other third party payors whose patients are utilizing the services of Foundation. Physician shall be entitled to access to such records, as needed, in connection with

responsibilities under this Agreement or as needed to comply with law. Foundation agrees to maintain such records in accordance with the policies and to promptly file materials into the records as they are prepared, authenticated, and/or signed by the responsible practitioners. Physician agrees that Foundation will honor requests of third party payors to furnish all information reasonably required to verify and substantiate the provision of covered services for individual patients, and, consistent with patient privacy rights, to furnish information regarding patient care to payors to enable them to perform quality assurance, payment methodology, and utilization review analysis of a payor, Physician, and/or Foundation.

  b. **Financial Relationships.** Neither Physician nor any member of Physician's immediate family may have a financial relationship (including an employment relationship) with Foundation that is related to the provision of designated health services (as defined at Section 1877 of the Social Security Act) during the term of this Agreement unless Foundation provides express written consent. Consent will be given or withheld based upon the perceived impact such a relationship could have on this transaction because of the application of Section 1877 of the Social Security Act (or similar state or federal legislation). If federal or corresponding state limitations are broadened to include other services, this provision shall be deemed to be coextensive with such broadened limitations. Physician certifies that, as of the effective date of this Agreement, no such relationship exists. Physician shall give Foundation written notice within five (5) business days following the creation of any such relationship during the term of this Agreement or any extension or renewal hereof. For purposes of this provision, immediate family is defined to mean spouse, natural or adoptive parent, child, sibling, stepparent, stepchild, stepbrother, stepsister, father-in-law, mother-in-law, daughter-in-law, son-in-law, brother-in-law, sister-in-law, grandparent, grandchild, and spouse of a grandparent or grandchild.

  c. **Foundation Policies.** Subject to Section 2 and 3(h), Physician shall abide by policies of Foundation in discharging all responsibilities under this Agreement as such policies are from time to time adopted and communicated to Physician.

  d. **Nondiscrimination.** Physician agrees to provide appropriate medical services to members of the public on the basis of need and without regard to ability to pay or demonstrated financial responsibility and without regard to race, creed, color, gender, sexual orientation, religion, national origin, or handicapping condition.

  e. **Relationships.** Physician shall establish and maintain positive and effective working relationships consistent with Foundation's mission, vision, policies, and procedures with other physicians and personnel of Foundation and affiliates of Foundation.

  f. **Current Knowledge.** Physician shall maintain and demonstrate current working knowledge in Physician's field of medicine relevant to Physician's responsibilities under this Agreement. This shall include requiring attendance at programs of continuing medical education, as needed.

  g. **Risk Management.** Physician shall comply with risk management and malpractice prevention practices in Physician's field of medicine when performing services. Physician will participate in peer review related to Physician's field of medicine on an as needed basis.

  h. **Medical Judgment.** Physician shall use his or her best professional judgment in determining when, how, where, and whether to render treatment to individual patients. Foundation shall not have, exercise, or attempt to exercise any control over the professional judgment and decision making of Physician. Physician is free to accept and treat patients according to his or her best medical judgment, or to transfer such patients for diagnosis or care to other practitioners or facilities in accordance with the patient's best medical interest, so long as the action of Physician is not based upon a prohibited reason enumerated in Section 3(d) above. In the event that Physician reasonably believes that Foundation or any other entity is attempting to interfere with the exercise of independent medical judgment, Physician shall: (i) first notify a Regional Physician Leader and attempt to resolve the difference through intercession of a Regional Physician Leader; and (ii) thereafter raise the issue with the Regional Physician Leadership Council. The Regional

2

Physician Leadership Council is authorized to investigate complaints by Physician and make findings and recommendations to the Regional Physician Leader within its area of responsibility.

The foregoing shall not relieve Physician of the obligation to follow bylaws, rules and regulations, policies, and directives of Foundation, including policies and plans such as those dealing with utilization review, quality assessment and management, drug formulary, and appropriate utilization of space, staff, equipment, and supplies. Additionally, Physician is obligated to comply with Foundation's physician-approved, evidence-based patient care policies, standards, and protocols so long as these standards and protocols are not contrary to Physician's professional judgment and the patient's best interests.

    i.    **Conflict of Interest.** Physician shall not, during the term of this Agreement, be an owner, officer, partner, shareholder or director of, or have any ownership or control interest in, any organization or entity which: (i) provides health care services in competition with Foundation or any affiliate of Foundation; or (ii) is a managed care organization, licensed insurance company or HMO, an organized delivery system under Iowa law, a competitive medical plan or provider services organization under federal law, a third party administrator of managed care plans, or a provider network, without Foundation's express written consent, provided, however, nothing herein shall preclude Physician from having an investment interest in an equity security registered with the U.S. Securities and Exchange Commission, when such investment interest is acquired on terms equally available to the public through trading on a registered national or regional securities exchange.

4.    **Responsibilities of Physician.** Throughout the term of employment hereunder, Physician commits to the following obligations:

    a.    Establish a medical practice in Physician's specialty, and maintain and conduct such practice at one or more sites as mutually agreed to;

    b.    Participate actively in the affairs of Foundation;

    c.    Subject to Section 2 and 3(h), comply with the oral and/or written directives of Foundation;

    d.    Accept assignment from patients covered under government payors, including, but not limited to, Medicare and Medicaid;

    e.    Treat on a non-discriminatory basis patients who are covered by Medicare and Medicaid;

    f.    Provide emergency medical services when called upon to do so, without regard for an individual patient's ability to pay or ability to demonstrate financial responsibility;

    g.    Provide a reasonable level of non-emergency medical services to residents of the service area, on a free or reduced-cost basis, based upon such patients' ability to pay, in order to extend the reach of professional health services in the community;

    h.    Qualify as a participating provider and provide services in accordance with the applicable terms of managed care, insurance, or other payor arrangements, including any value-based payor arrangements, specified by Foundation;

    i.    Engage in such research and educational endeavors as reasonably directed by the Board of Directors in order to promote the scientific and educational goals of Foundation;

    j.    Participate in and cooperate with Foundation committees on a reasonably equivalent basis with the other physicians employed by Foundation;

3

k. Enroll in continuing education or other professional education programs designed to improve treatment modalities, reduce health care costs, or expand community health services as reasonably requested by Foundation;

l. Establish and maintain positive and effective working relationships with patients, family members, and personal representatives, and with Foundation employees, personnel or medical staffs of Foundation's affiliated entities, and outside referring practitioners and agencies; and

m. In conjunction with Physician's obligations under Section 2, disclose any professional obligations of Physician other than Physician's obligations to Foundation.

5. **Qualifications.** During the term of this Agreement, Physician shall continuously:

a. Hold an unrestricted license to practice medicine and surgery in the state(s) in which Physician provides services;

b. Obtain and continuously maintain membership in good standing on the medical staff of such hospitals as may reasonably be determined by the Board of Directors of Foundation with applicable clinical privileges commensurate with Physician's responsibilities under this Agreement;

c. Hold unrestricted state and federal authority to prescribe and administer all drugs and pharmaceutical agents necessary or appropriate to the practice of medicine in general and to Physician's specialty in particular;

d. Be eligible to provide medical services covered under Titles XVIII and XIX of the Social Security Act;

e. Be board certified in Physician's specialty or be board eligible and making satisfactory progress toward board certification, unless the Operating Committee of Foundation expressly waives this requirement due to extenuating circumstances. In the event that Physician is board eligible and making progress toward board certification, Physician shall be required to attain board certification within the greater of five (5) years or the minimum number of years reasonably required to attain board certification in Physician's specialty;

f. Hold and maintain satisfactory compliance with, and completion of, employment related requirements, including, without limitation, background screening, criminal background screening, reference checks, and other post-offer/post-hire obligations, as is required by Foundation;

g. Be eligible for coverage under professional liability insurance or self-insurance programs maintained by Foundation pursuant to such standards as are applicable to physician employees of Foundation; and

h. Subject to short term illness or disability, be physically, mentally, and emotionally fit to discharge the responsibilities under this Agreement.

This Agreement shall not be construed as guaranteeing that Physician has been found to meet the foregoing qualifications, it being the sole responsibility of Physician to do so prior to commencement of this Agreement. The commencement of this Agreement is expressly conditioned on Physician meeting the preceding qualifications.

6. **Information Regarding Qualifications.** In order that Foundation may initially and on an ongoing basis properly assess Physician's meeting of the qualifications described above and other qualifications as may from time to time be established by Foundation in connection with Physician's professional services under this Agreement, Physician shall:

4

a. Provide Foundation with all information requested by Foundation in connection with Foundation's review of such qualifications.

b. Promptly notify Foundation of any action or threatened action which may impact Physician's meeting of such qualifications, and provide full details thereof, including, but not limited to, any non-routine contact with the state entity or entities that regulate and oversee the practice of medicine.

c. Promptly notify Foundation of any action or threatened action against Physician alleging professional negligence or malpractice, whether arising out of actions under this Agreement or otherwise, and provide full details thereof.

d. Promptly notify Foundation of any reviews, audits, or inspections by third party payors of Physician's billing, medical care, or office practices or procedures, and provide full details thereof.

e. Promptly notify Foundation of any contact with any governmental representative investigating or inquiring about possible violation of any governmental healthcare program, law or regulation.

f. Promptly notify Foundation or the UnityPoint Health Compliance Officer, General Counsel or Compliance Helpline of any circumstances reasonably believed by the Physician to constitute a violation of law.

The failure to fully and accurately provide information as described above shall constitute a failure to meet the qualifications stated at Section 5.

Physician hereby authorizes and directs third party payors and third party administrators to release or disclose to Foundation any and all information in their possession concerning Physician, including, but not limited to, any information related to Physician's qualifications and any information that may have been obtained by such third parties in connection with any application, quality management review, peer review, utilization review, physician profiling, or any other review, audit or inspection of Physician's billing, health care services provided, or office practices or procedures. Notwithstanding the nondisclosure requirements of Section 16, Physician agrees that Foundation may furnish a copy of this provision to third party payors and third party administrators and they in turn may rely on this authorization, in securing or granting access to requested information. Physician further agrees to execute any other consents or authorizations that may be required by third party payors, third party administrators, or Foundation.

7. **Billing Professional Fees: Assignment and Reassignment.** Foundation, as Physician's employer, shall be the sole owner of all receivables and collections relating to Physician's services as an employee of Foundation. Physician hereby irrevocably reassigns to Foundation all such receivables for billing and agrees that only Foundation may bill Medicare, Medicaid or other payors. Foundation shall adopt billing and collection practices which reasonably assure prompt and effective billing for all professional services of Physician. Physician shall furnish Foundation with daily data in form specified by Foundation itemizing all medical services provided by Physician. Upon obtaining necessary assignments from the patients and assignments or reassignments from Physician, Foundation shall bill and seek reimbursement of Physician's professional fees from patients, employers, insurers, the carrier under the Medicare program, and all other third parties as appropriate. Physician shall cooperate with Foundation by executing assignments, endorsing checks for professional fees which are paid to Physician, or otherwise assisting with billings and collection as requested by Foundation. To the extent that any payments are received by Physician, Physician shall be liable for immediate remittance of such payments to Foundation.

8. **Compensation.** If Physician is not subject to a salary guarantee or a compensation arrangement described on an attachment, Physician shall be compensated according to a schedule adopted for the physician employees of Foundation for Physician's field of medicine. Such schedule shall be established by the Board of Directors of Foundation upon the advice of and consultation with the Physician Compensation Committee and Senior Management of Foundation. All compensation shall be paid in accordance with Foundation's regular payroll practices for Physician employees less required federal and state withholding. Physician's job is classified as salaried-exempt.

5

9. **Duty of Loyalty and Honesty.** Physician agrees to observe the following duties of honesty and loyalty to Foundation as an integral part of the employment relationship: (i) to serve the Foundation's interests with utmost good faith and honesty and to act in furtherance of Foundation's interests; (ii) not to withhold information from Foundation which would be useful to Foundation in the protection or promotion of its interests; (iii) to protect the business secrets of Foundation; (iv) not to appropriate, directly or indirectly, to Physician's personal use or benefit, any business opportunity presented or available to Foundation to which Physician is exposed by virtue of Physician's employment and responsibilities under this Agreement; and (v) not to disparage or injure Foundation, its affiliates, or Foundation or Foundation's affiliates personnel by making or causing to be made false, malicious, or disparaging remarks, written or oral, regarding Foundation or its services.

10. **Fringe Benefits.** Physician shall be entitled to participate in fringe benefit plans established by the Board of Directors. Participation in fringe benefit plans is expressly made subject to meeting the eligibility standards and terms and conditions of each such plan or program as well as the underwriting criteria of the various insurance companies.

11. **Facilities.** Foundation shall furnish offices, exam rooms, staff help and such specialized equipment, supplies, facilities, and technical services as may be required for the performance of Physician's duties, as determined by Foundation.

12. **Professional Liability Insurance.** Foundation shall be responsible to maintain professional liability protection covering Physician and Foundation during the term of Physician's employment under this Agreement against claims based on acts or omissions of Foundation or Physician occurring during the period of Physician's employment under this Agreement. The level of coverage shall be determined by the Board of Directors, but it shall be equivalent in amount to that provided to similarly situated physicians employed by Foundation. Such coverage may be through one or more policies of commercial insurance purchased and maintained by Foundation, through a program of self-insurance, or through a combination of commercial insurance and self-insurance. Foundation shall review with Physician the provision made for coverage under this Section at any time upon request.

If Physician's employment is terminated as a result of death, retirement, or disability such that Physician is not capable of practicing medicine, or by Foundation for no cause, Foundation shall be responsible for paying the cost of an extended reporting period endorsement ("tail coverage") which is necessary to insure against claims reported subsequent to Physician's termination of employment with Foundation. If Physician's employment is terminated for any reason other than the reasons set forth in the preceding sentence, Physician shall be responsible for paying the cost of tail coverage. The amount of tail coverage required shall be determined by the Board of Directors, but it shall be equivalent in amount to that provided to similarly situated physicians employed by Foundation. Physician's responsibility for paying the cost of the tail coverage shall be determined as follows:

| Years of Service at Foundation | Percentage of Physician's Responsibility For Cost of Tail Coverage |
| --- | --- |
| Less than 1 year | 100% |
| Between 1 and 2 years | 66.6% |
| Between 2 and 3 years | 33.3% |
| 3 years and longer | 0% |

Physician expressly authorizes that Foundation shall have the right to withhold earnings due to Physician from Foundation as Physician's employer to cover Physician's financial responsibility set forth above to cover the extended reporting endorsement. Physician acknowledges and agrees that such arrangement is for Physician's benefit. Such extended reporting period endorsement shall be maintained by Foundation through a program of self-insurance, or through one or more policies of commercial insurance that are purchased and maintained by Foundation, or through a combination of commercial insurance and self-insurance. If such extended reporting period endorsement is provided through a program of self-insurance, Physician agrees that the premium shall be based on commercial insurance rates

6

for extended reporting period endorsements or on such other actuarially appropriate method that Foundation, in its sole discretion, shall utilize. For purposes of this Section, "retirement" shall refer to the complete and permanent withdrawal from the practice of medicine, subject only to such exceptions as may be approved by Foundation, after age sixty-five (65) or such earlier retirement age as may be recognized under Foundation's then current professional liability insurance policy.

13.     **Dues and Expenses**. Foundation shall pay directly or reimburse to Physician the periodic expenses reasonably incurred for approved professional dues and licenses and hospital staff privileges. In addition, Foundation shall pay directly or reimburse to Physician for the approved, reasonable expenses incurred for attending continuing medical education programs and for costs of subscriptions to medical journals and periodicals. Any reimbursement under this Section shall be subject to timely, appropriate documentation by Physician in compliance with applicable Foundation policies. The terms of the amounts Physician is entitled to under this Section shall be determined in accordance with the policy adopted by the Board of Directors. Any funds which are unused at the end of a calendar year shall not be paid to Physician. Any unused funds may be carried over for use in future years; provided, however, that at no time may the funds available to Physician for dues and expenses pursuant to this Section exceed the limitation set forth in the policy adopted by the Board of Directors.

14.     **Term and Termination of Employment.**

    a.      **Term**. The term of Physician's employment under this Agreement shall commence on or about the date noted in Section 1 above and shall continue until terminated as hereinafter provided.

    b.      **Termination.**

        (1)     Either party hereto may voluntarily terminate this Agreement at any time, without a showing of cause, upon the giving of one hundred twenty (120) days' written notice to the other; provided, however, Foundation shall not terminate Physician's employment under this Subsection without a majority vote of a quorum of the Regional Provider Council of the region in which Physician practices. In the event the Regional Provider Council of the region in which Physician practices recommends against termination of Physician's employment, senior management of Foundation may appeal this recommendation to the Board of Directors of Foundation and Foundation may terminate Physician's employment upon a majority vote of a quorum of the Board of Directors. Any of the foregoing notwithstanding, in the event the Foundation Bylaws are amended at any time to discontinue the authority of the Regional Provider Council (of the region in which Physician practices or of all regions) with respect to employment termination decisions, the foregoing requirements with respect to the Regional Provider Council shall be inapplicable and Foundation may terminate the Agreement upon the giving of one hundred twenty (120) days' written notice without the vote of any other person or governing body, including but not limited to the Board of Directors.

        (2)     The employment relationship shall automatically terminate in the event Physician dies or suffers a disability. For purposes of this Section, the term "disability" shall refer to the inability of Physician to perform one or more of the essential functions of his or her employment under this Agreement due to any physical or mental impairment with or without any reasonable accommodation required by law. If Physician's inability to work continues for a period of three (3) calendar months, or ninety (90) total nonconsecutive working days in any consecutive twelve (12) month period, Foundation shall evaluate Physician's prospects for return to work and determine whether to terminate this Agreement on the basis of "disability" after considering the specific facts and circumstances of Physician's condition, staffing needs of the Foundation, and other factors under applicable law.

        (3)     Foundation shall have the right to terminate Physician's employment under this Agreement "for cause" upon three (3) days' written notice in the event: (i) Physician ceases to meet any of the qualifications stated in this Agreement; (ii) Physician commits embezzlement or fraud; (iii) Physician engages in conduct in material violation of established medical ethics; (iv) Physician

7

misuses substances (e.g., illicit drugs or prescribed medication) or performs services under this Agreement while impaired by any chemical substance; (v) Physician commits other similar breaches of professional or personal conduct; (vi) Foundation reasonably determines that Physician is failing to fulfill his obligations to Foundation, including, but not limited, to those obligations set forth in Foundation's policies; (vii) Foundation reasonably determines that Physician is failing to provide adequate patient care or is jeopardizing the safety of patients or staff; (viii) Physician engages in criminal activity or has committed a crime which in the judgment of Foundation adversely and materially reflects upon Physician's ability to provide services hereunder or adversely and materially reflects upon Foundation's business or mission; or (ix) Physician is in material breach of this Agreement as determined by a majority vote of a quorum of the Regional Provider Council of the region in which Physician practices. In the event the Regional Provider Council of the region in which Physician practice recommends against termination of Physician's employment, senior management of Foundation may appeal this recommendation to the Board of Directors of Foundation and Foundation may terminate Physician's employment upon a majority vote of a quorum of the Board of Directors. Any of the foregoing notwithstanding, in the event the Foundation Bylaws are amended at any time to discontinue the authority of the Regional Provider Council (of the region in which Physician practices or of all regions) with respect to employment termination decisions, the foregoing requirements with respect to the Regional Provider Council shall be inapplicable and Foundation may terminate the Agreement upon the giving of one hundred twenty (120) days' written notice without the vote of any other person or governing body, including but not limited to the Board of Directors.

Foundation may temporarily suspend this Agreement during any period of investigation for the purpose of making any such determination.

(4) Physician shall have the right to terminate Physician's employment under this Agreement "for cause" upon three (3) days' written notice in the event any of the following events remain uncured for a period of fifteen (15) days or longer and constitutes grounds for "for cause" termination under this subsection: (i) Foundation is in formal insolvency or bankruptcy proceedings or receivership and Foundation is unable to assign the Agreement under Section 18(b) to a qualifying entity; (ii) Foundation is formally excluded from participating in the Medicare program by agency action; or (iii) Foundation willfully and materially breaches the material terms of this Agreement and such breach is fundamental and material to Foundation's responsibilities to Physician herein.

(5) Either party may terminate this Agreement by written notice to the other in the event that any court or governmental authority determines that either party is, under this Agreement, operating in violation of any law or regulation and such party does not or cannot promptly take such steps as are necessary to remedy such violation; or is in violation of Section 1128B(b) of the Social Security Act or any present or future state or federal law which would prohibit a provider of any health service from billing or receiving consideration for services to Medicare or other patients referred by Physician, or is in violation of Section 1877 of the Social Security Act or any present or future state or federal law that would prohibit Physician from making a referral to Foundation or to a hospital or facility under common control with Foundation; or that Foundation is, by virtue of this Agreement, operating in violation of the requirements for maintenance of its status as an organization under Section 501(c)(3) of the Internal Revenue Code; or Foundation reasonably determines, based upon threatened action or the advice of legal counsel that either party is in violation of such laws; provided, however, each party agrees to use their best efforts to promptly negotiate any reasonable changes to the Agreement to address such violations and neither party can terminate this Agreement unless the parties do not or cannot promptly take such steps as are necessary to remedy such violation. The parties acknowledge that this Agreement is executed at a time of major impending change in federal, state, and local health care delivery and reimbursement. The parties agree to negotiate in good faith in an attempt to revise or modify this Agreement in the event of material changes in federal, state, or private health care delivery or reimbursement rules which affect either party's position under this Agreement in a way not reasonably foreseen at the time this Agreement was executed.

8

(6) Termination of Physician's employment shall be governed solely by this Agreement and shall not be subject to any corrective action or grievance or compensation procedures applicable to other employees of Foundation.

15. **Post-Termination Restrictive Covenant.** Physician shall be subject to the restrictive covenant set forth in the Attachment to the Physician Employment Agreement, which is attached hereto.

16. **Non-Disclosure.** The terms of this Agreement shall be confidential between the parties. Subject to any exceptions in this Agreement, neither party shall disclose the terms of this Agreement, except as reasonably necessary to carry out the provisions of this Agreement, or as agreed to in writing by the other party. In addition, during the course of carrying out his or her responsibilities under this Agreement, Physician will have access to and participate in the development of Foundation's business plan, marketing strategies and materials, educational and consulting materials, and other records (hereinafter collectively referred to as "Confidential Materials"). Physician agrees not to divulge any such Confidential Materials to any third party or to utilize any such Confidential Materials except in carrying out his or her responsibilities under this Agreement. This clause shall survive the termination of this Agreement. Upon termination, any such Confidential Materials shall be returned to Foundation.

17. **Program Defaults and Off-Set.** Physician certifies that Physician is not now in default under, and upon execution and performance of this Agreement will not be in default under, the National Health Service Corps Scholarship Program, the Physician Shortage Area Scholarship Program, the Health Education Assistance Loan Program, or any other program that would permit off-set of delinquent or defaulted obligations against payments due Foundation under the Medicare program now or during the term of this Agreement. Physician further certifies that, to the best of Physician's knowledge and belief, Physician is not now subject to an off-set or repayment obligation under the Medicare, Medicaid or other third party payor programs, based on past billing, ordering or documentation practices. In the event that Physician has any actual or potential liability of the nature set forth above in this Section or in the event that the representations by Physician in this Section are not accurate, Physician acknowledges and agrees that: (i) any such liability is solely the responsibility of Physician; (ii) Foundation shall have no responsibility for such liability or to defend Physician against any associated claims of liability; and (iii) any false representations by Physician pursuant to this Section shall constitute a breach of this Agreement.

18. **Miscellaneous.**

a. **Severability.** In the event one or more of the provisions contained in this Agreement are declared invalid, illegal, or unenforceable, in any respect, the remaining provisions shall continue in full force and effect unless the effect of doing so is to substantially impair the underlying purposes of the parties in entering into this Agreement or to substantially alter the underlying rights and obligations of the parties.

b. **Assignment.** The rights established under this Agreement may not be assigned nor the duties delegated without the express written consent of the other party, except that Foundation may assign this Agreement: (i) to any not-for-profit successor entity operating Foundation; (ii) to any entity controlling, controlled by, or under common control with Foundation; or (iii) to any entity with which Foundation merges, consolidates, or reorganizes, or to which Foundation sells substantially all of its assets.

c. **Waiver.** The failure of either party to insist in any one or more instances upon full performance of any term or condition shall not be construed as a waiver of future performance of such term or condition or of the performance of any other terms or conditions; but the obligations of such party with respect thereto shall continue in full force and effect.

d. **Amendment.** This Agreement may be amended only by written agreement (attachment) signed by both Foundation and Physician.

e. **Notice.** All notices required or permitted to be given under this Agreement shall be in writing and shall be sent certified mail, return receipt requested. All notices shall be deemed to have been given as of the date of the postmark. All notices shall be addressed to the other party at the following addresses:

9

To Foundation:

Iowa Physicians Clinic Medical Foundation
Attention: Chief Operating Officer
1776 West Lakes Parkway, Suite 400
West Des Moines, IA 50266

To Physician:

John D. O'Holleran, M.D.
1101 E. 36th Street
Sterling, IL 61081

or at such other address as a party may from time to time designate by notice hereunder.

  f. **Governing Law.** This Agreement shall be governed by the laws of the State of Iowa, without regard to choice of law principles.

  g. **Entire Agreement.** This Agreement, all attachments to this Agreement, and if applicable any immigration documentation relevant to Physician's employment including, but not limited to, a J-1 Visa Waiver Affidavit, Agreement for the J-1 Visa Waiver Review, and Recommendation Process for any and all applicable states, constitute the entire current employment agreement between the parties and supersedes all prior written contracts, statements and understandings with respect to the employment relationship between Physician and Foundation, except for those provisions of prior agreements which, by virtue of express reference in this Agreement or any attachment to this Agreement are made to survive and continue to be applicable to the parties. Except as stated above, all prior agreements between the parties related to employment by Foundation are terminated upon commencement of employment as outlined in Section 1.

  h. **Corporate Action.** Foundation warrants and represents that all required corporate action has been completed and that upon execution by its Chief Executive Officer or his/her designee this Agreement shall constitute a binding obligation of Foundation.

  i. **Binding Effect.** This Agreement shall bind and inure to the benefit of both Foundation and Physician and their respective successors and legal representatives.

  j. **Counterparts.** This Agreement may be executed in more than one counterpart and each counterpart shall be considered an original. All counterparts collectively shall constitute one instrument representing this Agreement. A counterpart signed and sent by facsimile transmission or by electronic mail in portable document format (.pdf), or by any other electronic means intended to preserve the original graphic and pictorial appearance of the document, shall have the same effect as physical delivery of the paper document bearing the original signature.

  **IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the dates first appearing below their signatures.

| IOWA PHYSICIANS CLINIC MEDICAL FOUNDATION d/b/a UNITYPOINT CLINIC | JOHN D. O'HOLLERAN, M.D. |
|---|---|
| By: *Daniel P. Allen M.D.* <br> Daniel P. Allen, M.D. (Apr 25, 2022 07:23 CDT) | *John O'Holleran* <br> JOHN O'HOLLERAN (Apr 22, 2022 12:21 PDT) |
| Daniel P. Allen, MD, Chief Medical Officer | (Signature) |
| Date: _____ | Date: _____ |

10

# ATTACHMENT TO PHYSICIAN EMPLOYMENT AGREEMENT

Physician: **John D. O'Holleran, M.D.**

The following additional terms and conditions apply to the Physician Employment Agreement between Foundation and Physician. Defined terms shall have the same meaning in this attachment as in the Physician Employment Agreement.

**FTE Status.** Physician's FTE will be 1.0 and Physician must maintain patient contact hours according to applicable policy and/or Physician's compensation plan, whichever is more specific to Physician.

**Services to Outside Entities.** In the event Physician and Foundation shall agree that Physician's services under this Agreement shall include Physician providing services to an entity other than Foundation (such as serving as a medical director to an outside entity), Physician shall perform the services and discharge the responsibilities set forth in the agreement between Foundation and the outside entity related thereto.

**Relocation Expenses.** Foundation will reimburse Physician for reasonable and necessary relocation expenses not to exceed Ten Thousand Dollars ($10,000.00). Reimbursement is subject to appropriate documentation from Physician of such expenses and the policies of Foundation for type and amount of reimbursement. In the event that Physician fails to commence employment as set forth in the Agreement or ceases to be an employee of Foundation prior to the completion of two (2) years of employment for any reason other than death, permanent disability, or without cause termination of the Agreement by Foundation, Physician will be responsible for immediate repayment of all such relocation expenses. In addition to any other remedies, Physician expressly authorizes that Foundation shall have the right to withhold the relocation expenses from any amounts due to Physician from Foundation as Physician's employer, and Physician agrees that such arrangement is for Physician's benefit. The relocation expenses will be subject to withholding and applicable payroll taxes.

**Signing Bonus.** Foundation will pay a signing bonus to Physician in the amount of Twenty Five Thousand Dollars ($25,000.00) upon satisfactory completion of necessary licensure, hospital, and insurance credentialing applications. In the event that Physician fails to commence employment as set forth in the Agreement or ceases to be an employee of Foundation prior to the completion of two (2) years of employment at or above the initial FTE status for any reason other than death, permanent disability, or without cause termination of the Agreement by Foundation, Physician will be responsible for immediate repayment of the total gross amount of the signing bonus. In addition to any other remedies, Physician expressly authorizes that Foundation shall have the right to withhold the signing bonus from any amounts due to Physician from Foundation as Physician's employer, and Physician agrees that such arrangement is for Physician's benefit. The signing bonus will be subject to withholding and applicable payroll taxes.

**Compensation.** In lieu of being subject to a schedule adopted for the physician employees of Foundation for Physician's field of medicine (the "Physician Compensation Schedule"), Physician will initially be paid a salary of Five Hundred Thousand Dollars ($500,000.00) per year. This salary will continue for two (2) years, after which Physician will transfer to the Physician Compensation Schedule then in effect. At any time after one (1) year, Physician may elect to switch to the Physician Compensation Schedule then in effect, in which case Physician will no longer be paid a salary but will instead be subject to such compensation schedule.

If Physician elects to switch to the Physician Compensation Schedule then in effect after one year of guaranteed salary, Physician shall be eligible to receive a salary bonus if: (1) the compensation Physician would have received under the Physician Compensation Schedule (excluding any "Other Revenue"), if Physician had been compensated according to the Physician Compensation Schedule in effect on the last day of the guaranteed salary exceeds the Physician's guaranteed salary; (2) Physician elects to be compensated for the rest of the Agreement pursuant to the Physician Compensation Schedule in effect instead of

1

O'Holleran, John D. MD - Attachment

Case 5:23-cv-04056-LTS-MAR    Document 1    Filed 10/12/23    Page 15 of 17

Physician's guaranteed salary set forth in the paragraph above; and (3) Physician makes such election to be paid pursuant to the Physician Compensation Schedule in effect within thirty (30) days of receiving one (1) full year of clinical production data from Foundation. The salary bonus will be equal to fifty percent (50%) of the difference between what Physician would earn under the Physician Compensation Schedule (excluding any "Other Revenue"), if Physician had been compensated according to the Physician Compensation Schedule, and Physician's guaranteed salary.

**Death.** Upon the death of Physician while employed by Foundation, Foundation shall pay, for one (1) month after the date on which death occurs, the monthly compensation that Physician would otherwise be entitled to receive from Foundation during such period had Physician remained a full-time or regular part-time employee of Foundation. The payment provided for in this paragraph shall be made to Physician's surviving spouse, if any, otherwise to the estate. No compensation shall be payable for any period beyond such month unless otherwise determined by the Board of Directors.

**Vacations, Continuing Education and Sickness.** Physician shall be eligible for paid time off according to the absence policy established by the Board of Directors. Absences for vacation and continuing education shall be scheduled in advance at times mutually acceptable to Physician and Foundation. Continued employment in good standing is a condition precedent to the use of such time off. Unused time shall not be taken in the form of cash in lieu of time off, shall not be used following notice of employment termination unless pre-approved by Foundation, and shall not be paid to Physician in cash upon termination of employment.

**Post-Termination Restrictive Covenant.** Physician shall be subject to the following restrictive covenant:

a. **Term and Scope.** Physician covenants and agrees that for a period of one (1) year following termination of employment for any reason other than termination by Foundation without cause under Section 14(b)(1), or termination by Physician under Section 14(b)(4), Physician shall not, directly or indirectly, within a twenty (20) mile radius of any location where Physician renders at least thirty-five percent (35%) of Physician's services to which he or she is or has been assigned within the prior twelve (12) months, engage in a medical practice to the extent such practice includes entering into or participating in contracts with payors, affiliates of payors, or successors to payors with which Foundation has had a contractual provider relationship within the two (2) years preceding the date of termination of employment. For purposes of this Section, "directly or indirectly" shall include Physician's affiliation as an employee, employer, consultant, agent, principal, partner, independent contractor, stockholder, officer, director or any other individual or representative capacity.

b. **Nonsolicitation.** Physician and Foundation recognize and acknowledge that employees who are engaged in health care services possess special, unique and extraordinary talents which are in great demand in the present economy and further recognize and acknowledge that each party has incurred substantial expense in recruiting and training such employees and would incur even greater expense if required to replace any such employee. Accordingly, during the term of this Agreement and for a period of two (2) years following the termination of this Agreement, Physician shall not employ or solicit for employment any employee of Foundation or an affiliate of Foundation who provides services for Foundation in the communities in which Physician provided services for Foundation. This provision shall not prohibit the hiring of any person who responded to general solicitations, including, but not limited to, job postings published in newspapers, trade publications, or on websites that did not target that person directly.

c. **Damages for Breach.** Physician agrees that any violation by Physician of any provision of this Section will cause Foundation to suffer irreparable harm. Damages for such harm will be incapable of precise measurement and, as a result, Foundation will not have an adequate remedy at law to redress the harm caused by any such violation of any provision of this Section of this Agreement. Accordingly, if Physician breaches the terms of this Section, then Foundation shall be entitled to institute legal and equitable proceedings in any court of competent jurisdiction. Foundation may seek to obtain damages for any breach of these covenants, to obtain specific performance by Physician, or to enjoin Physician from performing services in violation of its terms. In particular, in addition to any other remedies, Foundation shall be entitled to injunctive relief,

2

including, but not limited to, temporary restraining orders and/or preliminary or permanent injunctions to restrain or enjoin any violation or threatened violation of any provision of this Section of this Agreement. In addition to the legal and equitable relief to which it shall be entitled, in the event Foundation is determined to be entitled to legal or other relief, Foundation shall be entitled to recover from Physician the costs and reasonable attorney's fees incurred by Foundation in seeking or defending: (a) enforcement of this Agreement; or (b) relief from violation of any provision of this Section of this Agreement.

d. **Reasonableness.** Physician, by entering into these covenants, agrees that the time and area limitations within which Physician shall be restrained from competing with Foundation are reasonable. In the event a court determines that either the area and/or the period of time is unreasonable, then this Agreement shall be deemed to be automatically amended so that the area and/or the period of time will be reduced to a maximum area and/or period of time which the court determines to be reasonable.

IOWA PHYSICIANS CLINIC MEDICAL
FOUNDATION d/b/a UNITYPOINT CLINIC

By: *Daniel P. Allen M.D.*
Daniel P. Allen M.D. (Apr 25, 2022 07:23 CDT)

Daniel P. Allen, MD, Chief Medical Officer

Date: _____

JOHN D. O'HOLLERAN, M.D.

JOHN OHOLLERAN (Apr 22, 2022 12:21 PDT)

(Signature)

Date: _____